Good morning. Judge Rosenbaum and I are very pleased to have with us for the second morning in a row to finish out our week with us Judge Ann Conway from the Middle District of Florida. Judge Conway is a senior district judge. She has assisted us with our work on many occasions. For those of you who do not know, federal judges, of course, when appointed by the President and confirmed by the Senate, have appointments, some would say for life. My wife reminds me that the Constitution says during good behavior. And so long as we are on our good behavior, we can retire at 65 and enter what is called senior status. A senior judge who continues to do work and to assist us with our work, works for free. There's no obligation to do so. And Judge Conway is one of the many judges who serves in that capacity, who works for free to assist us in our country, in our federal judiciary, with our work. Twenty percent of the caseload of the federal judiciary is born, at least twenty percent, maybe a little more, is born by senior judges. And we really couldn't perform our mission without their assistance. So we're grateful, as always, to have her here with us this week, as we are with all the senior judges who assist us with our work. And thank you for being here. So we're going to hear two appeals this morning. Another case we've already decided to take on the briefs without oral argument. Counsel, we know about your cases. We've read your briefs, the authority cited in your briefs, at least portions of the record. We probably have some questions for you this morning. In the limited time that is available to you, you should feel free to go straight to the heart of your argument. Please do not treat the red light as aspirational. When the red light shines, it is time to finish up. But if you're answering a question from the court, feel free to finish your answer. So we will begin this morning with United States v. Brown. Mr. Kent, will you please come and speak with us? Thank you, Your Honor. May it please the court. Mr. Rhodes, ladies and gentlemen, with the court's permission, I'd like to use my time this morning exclusively for the juror question and rest on the supplemental briefs as to the forfeiture issue. It's an honor to be in front of the court this morning, both on behalf of my client and just an honor to be in front of this court. It's a privilege. I want to say up front what this case is not about. It's not about the district judge. Judge Corrigan, who is a trial judge in this case, as Judge Conway knows, is probably, you know, if not the most respected, one of the most respected judges in the Middle District of Florida. Judge Corrigan is a judge who I'm always pleased to . . . None of us is perfect, though. None of us is perfect. And this is that one exception, sort of, that proves the rule because I'd say 98 times out of 100, Judge Corrigan would hit it out of the ballpark, but we respectfully believe that an error was made in the decision in this case. Our position is that the district court abused its discretion in discharging juror number 13 over the defense objection. Now, of course, abuse of discretion ordinarily is a fatal standard of review for an appeal, but in this case it's not because, as the court knows, court automatically or per se abuses discretion when it misapplies the law or makes its . . . bases its decision on an erroneous view of the law, and that's our position here. The jury had deadlocked at the end of the second day of deliberations. The jury had decided to report the deadlock to the judge the next morning, and I believe it was the juror who was to make that report instead reported to a bailiff and prepared a note which was given to the court and to the attorneys that said that one of the jurors, juror number 13, had on two occasions, one shortly after deliberations began and then a second time in the second day of deliberations, that a higher power had instructed him that the defendant was not guilty. However, the defendant's objections, the court brought in juror number 13 for an inquiry. Is it fair to say that those two statements by the juror number 13, one at the beginning and then later, what appears to have been a few hours later, which the juror then would later affirm to Judge Corrigan was something that the juror said, that that constitutes the entire basis for the district judge's decision to dismiss that juror? Yes, sir. Well, didn't Judge Corrigan also make a factual finding here after some fairly extensive questioning? Didn't he make a factual finding that after judging the credibility of the witness, of the juror, that there was no substantial possibility that the juror would be able to base his decision only on the evidence in the law as the court gave it to him in the instructions, and that instead he was using external forces to bring to bear on his decision making in a way that's inconsistent with his jury's service and his oath? Yes, ma'am. And see, that's where we say the error lies, because in the last part of what you read from the judge's order, that the juror was, the judge made a finding, which we say is a legal conclusion, that the juror was relying upon external forces to reach his decision. And that's the, Judge Corrigan was finding that the juror was failing to follow the court's instructions, that is, that he was to base his decision on the evidence presented in by the court. Of course, it's a little bit confusing to me, because earlier, just before the judge makes that finding, he also says that the juror, he is very sincere, is earnest, and believe, and he has no doubt the juror believes that he is doing what the court has instructed. And that's why this is not a fact finding that would ordinarily be subject to this clearly erroneous review. Again, a standard that's virtually impossible for an appellate to, appellant to overcome, because the judge did not find the juror was not credible. In fact, the judge based his decision on the credibility of the juror. That's the things the juror said, the juror accepted those. The juror himself did not seem to understand the difference, did not seem to understand the instructions versus external forces. I mean, that's the interchange that I think is key, is where the court asks, did you say the words, a higher being told me that Corrine Brown was not guilty on all charges? And the juror says, no, I said the Holy Spirit told me that. And the court says, okay, and you, I don't want to get into your deliberations. But at what point in the deliberations was that? Was it at the beginning? Was it early in the deliberations? When was it? And the juror says, I mentioned it in the very beginning when we were on the first charge. And so the problem to me seems to be that, you know, a religion is one of those things that injects, obviously, an extra layer into this equation here. Because religion is a very important thing in many people's lives, and well, it should be. But let's say, and I don't mean to compare religion to Google, but just to take the religious part of it out of the equation. Let's say that the juror said, instead, I looked at Google, right, and I read a bunch of articles on Google, and they told me that she was not guilty on all charges. And I announced this at the beginning of the deliberations. In other words, I did not participate in the deliberations. I came to the deliberations with this outside source, and then I did not participate in the deliberations. I mean, to me, that is a problem. Would you not agree? That, your hypothetical, would be a problem, and I agree perfectly with your hypothetical. The legal problem here is, do we see a person, a juror praying and believing in his mind that he's receiving guidance in response to his prayer? Is that guidance that the juror imagines in, or thinks he sees or hears in his mind, is that an external force that's known in the jurisprudence of jury deliberations? It absolutely is not. There's no authority for that proposition whatsoever. I don't think there's a problem at all. And I think, you know, that it shows that a juror is serious about his or her deliberations. If a juror finds religion in his or her life to be important, to pray on the issues, to pray on the evidence, because this is a serious decision that a juror is making. But there is a difference, in my mind, between asking God for guidance and reviewing the evidence, and asking God for God's assistance in divining the meaning of the evidence and how, you know, understanding what it means, and instead coming into the deliberations before even examining the evidence and saying, God told me that the defendant is not guilty. Why is there not a difference between those two things? Well, Your Honor, because the court, if the court were to make that holding, it would be a holding of first impression in federal courts, or in any court, because the Google search, that is your classic external influence. That is like the three Supreme Court cases, a bribe comes, a juror's bribe, money's paid to a juror, external influence. Juror, it receives information from a bailiff, like Google, the bailiff becomes Google. The bailiff tells the juror, that defendant has a bad criminal record, the judge didn't let you hear about. Or the juror during deliberations is associating with a key government witness, talking to a key government witness during deliberations. Those are external influences. The external influence is understood in the jurisprudence of juror deliberations, requires a real thing. That is, there has to be a fact-finding, this, there was a bribe, there was information passed on via Google or a bailiff, but not simply. Mr. Kent, I understand your brief, I agree with all that, but let's get to a point I think that is important, as I understood it in your brief, and that is that there is more than a substantial possibility that when a juror says that I have received guidance from the Holy Spirit, that that is not, the juror is not a religious person from any of the major religions of the world, would understand God to be not only transcendent in the universe, but a source inside your soul, that it is eminent, that it is part of your being, and that when you say you're receiving God's guidance, it is internal, not external. Is that part of your argument? Absolutely, Your Honor. Thank you. And so it's a mental process, and this is why 606 may or may not apply under strict language, Rule 606, not impeaching the verdict, but the verdict of this particular juror, but you cannot get into the mental process, how we reach decisions in our mind, whether it's by religious guidance or by Cartesian logic, whatever it may be, that is, that's the jurors permitted to do. Do the jurors in the mental district take an oath for jury service? The jurors do, as do all the witnesses, that they will seek the truth, so help them God. Yeah, they say, so help me God, so they ask God to help them in their work as jurors. The court requires them to, Judge Rosenbaum. This is, you know, this is not insanity. As we're dealing with something that society— I'm not in any way suggesting it's insanity, and I'm very respectful of religion and its role that it plays in society, but I think that's a different question, and I think what we have to ask ourselves is how, is, did this juror examine the evidence, and did this, was this juror basing his or her, and in fact this case it's a his, his decision on the evidence along with whatever guidance he thought he was receiving, did he base it on that, or did he instead come to the deliberations with, with a decision already in mind, regardless of where he felt that it came from, did he come to the deliberations with a decision already in mind from something other than the evidence? And that's the problem here, in my, in my view. My red light's showing, but you may answer the question. Um, Judge Corrigan made a finding that this juror was sincere and earnest. Judge Corrigan made a finding that the juror thought he was following the court's instructions. If we're to remove this juror, especially in the Eleventh Circuit holds that when a holdout juror, there's a special heavy burden before you remove a holdout juror, as this one was. That juror— No. Yes. Juror eight, who brought, first brought this to the attention of the district court, right? Yes, sir. Said the juror had, juror number thirteen had said this at the beginning and then said it a few hours later, but was asked by the district court, is that juror deliberating? Answer, yes. And was told what? Yes. Yes. Not interfering with the deliberations of the jurors. Is there anything about the situation as it stands right now that's interfering with your ability to deliberate in the way the court has directed in the instructions? The juror says, no, sir. Not at all. I was more concerned that it was going to interfere in his, I was, I was concerned that it was going to interfere in his ability to do that, but at that point, it had not. Is that right? That's right. And Judge Rosenbaum, what I would say in response to your question, your statement is this. If we're to make new law, this would be that a juror may not do this. Surely that juror, because the law of the Eleventh Circuit is under Oscar, a juror must refuse to follow instructions, not simply not be following, but must refuse, which implies deliberate refusal. That juror must be told. There's nothing at all that requires intention, intentional refusal to follow instructions. If a juror is not able to follow instructions, that is enough of a reason. If not able, but the juror must first, we must make the inquiry first, tell the juror. Well, but Judge Corrigan found that this juror was not able to follow instructions, and that's a factual finding. It's a factual finding not supported by any record because the questions were not asked to establish the record to make such a finding. So Judge Corrigan brings the juror in and asks, are you having any difficulties with any religious or moral beliefs that are at this point bearing on or interfering with your ability to decide the case on the facts presented or on the laws I gave it to you in the instructions? Juror says, no, sir. Do you consider yourself to have been deliberating with the other jurors? Of course, which Juror 8 has already said the juror has been doing. According to the law and the instructions that the court gave to you before you went in to deliberate, answer, we've been going over all the individual numbers. And then the court says, don't tell me about those deliberations. I've been following. I've been following and listening to what has been presented and making a determination from that as to what I think and believe. Any problem with that, Mr. Kim? No, sir. And I mean, I could go on and on. There's a lot of this, right? And then the juror says, no, sir, I followed all the things you presented. My religious beliefs are going by the testimonies of the people given here, which I believe that's what we're supposed to do, and then render a decision on those testimonies and the evidence presented in the room, right? Yes, Your Honor, and Judge Conway and Judge Rosenbaum, with respect, I believe, again, Judge Corrigan, one of the best judges in the district. But I think the government, unfortunately, led Judge Corrigan into error in this case. Mr. Kent, you've saved five minutes for rebuttal, but let's hear from Mr. Rose. Thank you, sir. Mr. Rhodes, before you start, I want to tell you what our court has said about the standard here, okay? We've said because of the danger that a dissenting juror might be excused under the mistaken view that the juror is engaging in impermissible nullification, this court applies a, quote, tough legal standard. Specifically, in these kinds of circumstances, a juror should be excused only when no substantial possibility exists she is basing her decision on the sufficiency of the evidence. We've explained that this standard is, quote, basically a beyond a reasonable doubt standard. I'm having a difficult time seeing how the district court satisfied that standard. Okay. May it please the court, David Rhodes for the United States. I can give you several reasons supporting the district court's finding, but before I do that, let me say, even though that is a very serious standard, and I understand that a defendant is entitled to a unanimous verdict before he is found guilty, and we don't remove a juror because the juror is a holdout, doesn't agree with the other jurors, is dragging out the deliberations too long. Even if we think that it's reading of the evidence is just something that we can't understand. I agree, Your Honor. And there are many, many... Insofar as your brief says things about how unreasonable it was based on this evidence, that's not really something for us to consider. Excuse me? I don't... Insofar as your brief said, well, you know, there are parts of the brief that actually suggest. You know, the evidence about this was pretty strong. That's really not part of our equation. I could read parts of your brief that way, that you agree with me. That's not something for us to decide, is it? That's not something for you to decide, but as I'll explain, I don't think that's what I was saying in the brief, but I do think to some extent that goes into the district court's determination of the fact-finding of whether the juror is deciding it based on the sufficiency of the evidence, but I'll get to that in a moment, Your Honor. Let me first say this, just as an aside, this discussion about the jury being deadlocked, I don't think there's anything in the record, one, suggesting where the jury stood at that point in time. I agree with that. That was my reading. Okay. Thank you. And secondly, related to that, we have to keep in mind that juror number 13 made his pronouncement right at the beginning of deliberations as they were discussing count one. So that, to the extent his statement, which obviously factored into the court's finding of fact, that is not based on a holdout juror because the jurors had just begun their deliberation. Mr. Roach, do you agree with me, what I asked Mr. Kent at the beginning of his argument, which is really the sum and substance of this goes down to what that juror said at the beginning that it later admitted to the district court it had said, and what it said a few hours earlier, a few hours later, that it confirmed to the district court it had said. That really is the sum total when the juror confirmed that he had said that. That's the sum total, is it not, of the district court's determination to dismiss this juror? I would say that that was the basis for it, but I'll give you several reasons why, when you look at that in context and the other information that was before the court, that it is not simply those words that came out of his mouth. Didn't Judge Corrigan also comment that he was looking and judging the credibility, and then he noticed that the juror was hesitant at first to explain to the judge how his religious views have come to the fore during deliberations, and didn't he also make other comments, Judge Corrigan, I mean? Yes, he did, Your Honor. I mean, and if you go through the discourse that took place with this juror, it doesn't matter what I think. It matters what the district court found, but if you look through that, he kept asking him about was there a higher authority, and the juror number 13 was, in my view, very honest. He didn't have a district court's view about really answering that. Instead, he sort of pivoted to basing it on the testimony, and a district court judge who's making the finding of fact at this point can take that into account, certainly, in evaluating what was really behind this juror's initial pronouncing. What am I to make of this? The district court says, in this case, juror number 13, very earnest, very sincere. I'm sure believes he is trying to follow the court's instructions. I'm sure believes that he is rendering proper jury service. I think that's a fact-finding that you do what you will with that, but that doesn't alter the district. The district court says, but upon inquiry and observing juror 13, there's no question he's made statements that he is, quote, receiving information from a higher authority as part of his deliberative process, and in response to the court's direct inquiry as to whether he had said to other jurors, quote, a higher being told me Corrine Brown was not guilty of all the charges, close quote. So, it really comes down to those two statements, doesn't it? I don't think it comes down to just those. If I can go through what the district... In fact, I'm sorry to interrupt, but didn't he also say, it's not that the person is praying for guidance so that the person can be enlightened, it's that the higher being or the Holy Spirit is directing or telling the person what disposition of the charges should be made. That's absolutely right, Your Honor. That's how he viewed it. The district court took what he had said, you're right, Judge Pryor, what he had said initially and took into account what juror number 13 said when he had them in there talking. But set aside... Here's the thing, Mr. Rhodes, what the juror told the district judge is, I followed all the things you've presented. My religious beliefs are going by the testimonies of people given here, which I believe that's what we're supposed to do, and then render a decision on those testimonies and the evidence presented in them. So there is a substantial possibility, is there not, that when the juror says that I am receiving guidance from the Holy Spirit, he is doing that in a way that is consistent with his oath. I respectfully, Your Honor, I disagree. We have those statements... Not in a reasonable doubt. I understand that, Your Honor. And you could look at it in any criminal case, you have evidence that comes in that does exactly what that does in an ordinary case, which would exculpate a defendant. And juries are entitled to reject that testimony and find beyond a reasonable doubt the opposite of that testimony. Will you agree with me this? I mean, I looked at every decision where we have upheld the dismissal of a juror. Will you agree they are all much easier than this one? They are things like, you know, my religious beliefs tell me that the system is unfair, that there's entrapment going on here. When the district court had instructed them that there was no entrapment issue, that I'm not to follow the law and the evidence, those kinds of situations, those have been the kinds of records in the past that we have held when we've affirmed dismissals of jurors that we've held satisfy the standard. And this isn't like that. This isn't a case where a juror has said, I am not going to follow the court's instructions. But in the end, this is ultimately the same thing when you look at what the district court found. So wouldn't this be just as much of a problem if the juror, juror number 13, came in and instead said, a higher being told me that Corrine Brown was guilty on all charges at the very beginning of deliberations? Absolutely, Your Honor. And I'd like to think that no prosecutor would push for retaining that juror on the panel at that time. And I'd like to think no district court would leave that juror on the panel at that point instead of trying to decide whether, well, maybe the juror is just getting guidance from above. Because, OK, if I could go through the points I was trying to make about it. Please do. OK. So we start with what he said. He said that a higher being told me that she was not guilty on all counts. That's 24 counts. OK. That is a statement. He didn't say, I've sought guidance. He didn't say anything in that statement that related to the evidence at the trial. Point one. Point two. When did he say this? Although he did tell the district judge, when the district judge questioned him, I told them that I prayed about this. He said that when he was then questioned by the district court. He said that when the district court questioned him. That he had not only said, the Holy Spirit told me this, but that he had told his fellow jurors, I prayed about this. Right. But he doesn't say, he doesn't say, and he didn't say, the record doesn't show, that he told them this was based on his evaluation of the evidence. He told the district court that? More than once. And that's what the district court found. And the jurors admitted that the other juror said that he had been deliberating. Right. But what do we know about what he was deliberating about? So we go on. Point two. He said that at the beginning of deliberations. Now the jury, as he said, they were discussing then, they were at the beginning of discussing count one of 24 counts. And his statement wasn't, I think he's guilty of count one. It wasn't even that a higher authority told me he was guilty of count one. He interjected, I've been told she's not guilty of all 24 counts. So that too provides more support for the court's finding. And the court ended up ruling, or staying in his denial of the new trial order. That violated the court's instructions to not make a decision until the parties had deliberated. Because this is the beginning. And he's announced his decision, if you will, on all 24 counts. Do we know whether the foreperson had told the jurors early about the counts? About all of them? No, Your Honor, we don't. So that's possible. That sometimes happens, doesn't it, Mr. Bannon? I would say it sometimes happens. On our record, all we know is that they said it was right at the beginning when we were discussing count one. And then they begin deliberating, and he deliberates. Okay, so that takes me, and if you, let me just back up for a second. If you look at the FATA case, which we cited as our supplemental authority out of the Third Circuit, which also coincidentally involved a member of Congress. One of the things the Third Circuit looked at in deciding to uphold the district court's finding that that juror was not deciding the case on the basis of the evidence. They said, look, this was at the beginning of deliberations. This is a complex case. And this juror has announced not guilty, or he's not going to rule for the government on 28 counts. So the fact that this happened at the beginning, and he's announced that's more support there for the district court's finding. Because he went across that. Okay, then you look at what he said a few hours later. According to that letter, the court exhibit number one, what did he say? I trust the Holy Ghost. That reaffirms, or at least enabled the district court to find that, that he, rather than basing this decision on an evaluation of the evidence under the law that the court gave, was decided it based on what he had said initially. The problem with Mr. Rhodes is that he repeatedly told the court, though, that he is doing that. And the court also found that he had a sincere belief that he is doing that. Well, Your Honor, the court ultimately rejected that underlying fact that he was deciding it based on... Even though he had a sincere belief that that's what he was doing. I don't think that matters because it doesn't have to be a deliberate attempt... I have another case where a juror has ever been dismissed, where the appellate court has upheld it, where the district court found, after the juror had said, I'm doing that. I'm following your instructions. I'm following the evidence and I'm basing my decision on the evidence. I'm receiving divine guidance. I've prayed about this. The Holy Spirit has told me she's not guilty of all charges, but I see no conflict between my religious beliefs and doing what the court has instructed me. I'm doing exactly what the court's instructed me. And the court says, sincere, I believe he believes that that's what he's doing. But is there any case that has ever upheld a dismissal in that circumstance? Well, I'm not aware of any case that has gone that far. But there are many cases where the juror comes in and says, I believe I'm following the court's instructions. And the court rejects that because of... Where the court says, though, I believe he really believes that sincerely. I'm not aware of that, but I don't see how that matters because if a juror is not following the court's instructions, then the court has the discretion, a good cause to remove that juror. This Rule 23B is not a mechanism for punishing a recalcitrant juror. It's a mechanism for ensuring that the parties have a jury that is, that are fulfilling their roles as jurors by following the court's instructions and deciding the case based on the evidence that is presented to them. What if he had just said, I've prayed about this? Well... Is that a problem? Not even a little bit. And he told his fellow jurors, I've prayed about this. And the district court addressed that. One, I'm confident... What if he told his fellow jurors, you know, I'm listening to the evidence. I don't think the government's met its burden and, you know, I've asked for God's guidance. I believe God is giving me his guidance. I don't think the government's met its burden. I think, I don't think we would be here. I think, number one, as the district court found, I don't... Beyond a reasonable doubt on this record that that's not what's going on here? I'm not sure I understand the question. If that's what... My question is, what I just, the hypothetical I gave to you, I'm saying it's beyond a reasonable doubt that this record is markedly different. I think that record is markedly different, the one you just presented. And I think the district court, so the district court said, if that is what happened here, if that's what he had said, and if that's what I found as the fact finder had happened, he would be fulfilling his role as a juror. And in fact, he didn't think that the other juror, number eight, or the other jurors would have even brought it up. I imagine we don't hear what happens in a lot of juries, obviously. That happens all the time. And that's not a problem. This is completely different from that. The district court didn't clearly err in his fact finding, and he didn't abuse his discretion in removing juror number 13. We ask that the court affirm the convictions. No question. Thank you, Mr. Roach. Thank you, Your Honor. Mr. Kemp. May I please record, Mr. Roach brought up the Fatah case, which he filed as supplemental authority. And the Fatah case said, to reinforce the defendant's right to a unanimous jury, we've adopted a high standard for juror dismissals. And the Fatah court, and I believe it's the Third Circuit, said, there must be either juror bias, not here, failure to deliberate, not here. Well, arguably, I mean, yes, he's participating in the deliberations. But if he is coming into it, well, let me ask it to you this way. I'm going to ask you the same question that I asked the government. If the juror had come in and said, if juror number 8 had complained that juror 13 said, I pray, you know, I, the Holy Spirit told me that Corrine Brown is guilty on all counts at the beginning of deliberations, and ultimately, Ms. Brown was convicted, would we not be here if that juror had not been removed? I mean, wouldn't that be a problem for you? If it were a problem for me, it'd be a problem I would lose the appeal, however. The only case to answer that question, I cited my brief state versus the mill. That was what happened. The juror prayed for guidance, felt that God... Well, respectfully, that's a Utah case. And I respectfully disagree with that case. I don't think it reached the correct answer. But I understand your position on that. Well, Judge Rosenbaum, I'd say this, if we're to uphold that position, then we're disavowing the oath that every juror is required to take. There is a difference between asking God for guidance, praying on something, receiving what you believe to be God's guidance on something, as you're reviewing and actually deliberating on evidence, and coming into a deliberation saying, you know, the Holy Spirit already told me that she's not guilty on every count, or the Holy Spirit already told me that she is guilty on every count. That, to me, seems to be a tremendous factual difference. But the oath is, so help us God. Does that mean then if we feel like God tries to help us, we must reject God's help? Because that's what that comes down to. Is there any evidence in this record that the juror was not deliberating? No, no evidence. Is there evidence that the juror was deliberating? Yes, sir. The juror number eight, the complaining juror, acknowledged that this juror was deliberating. Judge Rosenbaum, there's nothing wrong. And there seems to be a presupposition in your question, in your statement, that there's something wrong with the initial straw vote, that the jurors, as soon as they reach the jury room, take a straw poll. Where do we stand? I, a juror came to me. There's no indication that this was some kind of initial straw poll. And even if it were, the fact that there's no, that it's not something that he's basing on the evidence. He's saying the Holy Spirit told me that she was not guilty. I think that is a problem. Jurors are told in the instructions the court gives them that they must not begin their deliberation, that is their mental process of assessing and weighing and reaching a decision on the evidence, until they retire to begin deliberations. When you shut that door to the jury room, at that moment, that juror can have an opinion as to what he thinks of that evidence. Now, how do any of us decide? I agree. And that's the key word, right? What that evidence shows. I completely agree. And it would be unrealistic to expect that a juror would come in with no view whatsoever, in every single case, of what the evidence shows. But that is a different thing than coming in and saying that, you know, the Holy Spirit or some other external force other than the evidence has told me that the defendant is or is not guilty as to 24 counts. But, Your Honor, here, the government's case rested on the credibility of two cooperating witnesses. How do any of us determine truthfulness? Then a witness has a cooperation plea agreement. They're going to get a sentence reduction if they testify the way the government wants them to testify. The juror's got to decide, by looking at that witness, is that witness telling me the truth or not? Well, I agree. But oftentimes, there's corroborating evidence or there's evidence that contradicts a witness. And those would be the types of things that, along with God's guidance, one would hope that a juror would consider. But when Mr. Rhodes emphasizes this, juror felt that he received guidance that the defendant was not guilty on all counts, that's not inconsistent with the concept that all counts depended upon the credibility of these cooperating witnesses who, frankly, were not credible. Judge Cargan punished one of the two cooperating witnesses. Essentially, the government asked for a three-year sentence. Judge Cargan gave a four-year sentence. Judge Cargan gave a four-year sentence to the cooperating witness and only gave a five-year sentence to the alleged ringleader of this, Congresswoman Brown. So Judge Cargan obviously had a distaste for that witness, who was the key witness. So, Mr. Kent, I believe your time is up. And I think we understand your case. And we'll take it under submission now. Thank you very much. Thank you. Thank you, Your Honor. Jackson versus McCurry. Can I borrow your water for a second? I guess people were thirsty this morning. Yes, please. Thank you. Thank you. Well, I regret to report that it does not appear everyone was